**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CAROLYN TAKHAR, INDIVIDUALLY
AND AS TRUSTEE OF THE GREEB S.
TAKHAR TESTAMENTARY TRUST,

        Plaintiff,

vs.                                                                              Civil No. 03-1256 WJ/RHS

THE TOWN OF TAOS,

        Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>
<u>**GRANTING MOTION TO DISMISS**</u>

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss, filed March 5, 2004 (**Doc. 8**). Plaintiff brings this claim under 42 U.S.C. § 1983 seeking monetary damages and other relief as a result of Defendant's conduct in connection with Plaintiff's construction of a small 42-unit apartment complex in Taos. Plaintiff alleges that the Town's actions in halting construction of her project before it was completed, constitute a taking in violation of her rights of federal due process and equal protection of the laws. Having considered the parties' briefs and the applicable law, I find that Defendant's motion is granted on jurisdictional grounds.

**Background**

The following facts are taken from the Complaint. In August of 1997, Plaintiff commenced development of the Village Alegrias Apartments after having acquired property located in Taos County, New Mexico. She hired Pete Romero as general contractor and obtained

the necessary approvals from the Town of Taos (hereinafter, "Town").  The Town issued a

building permit to Mr. Romero ("Romero") for the project which allowed him to proceed with

construction and authorized the Town to conduct inspections and to require changes or additions

to the project as mandated by the Town's relevant codes and ordinances.  In June of 1998, in a

letter to an adjoining landowner, the Town confirmed that all inspections of Plaintiff's project had

occurred and that the project met applicable zoning regulations.  In November of 1998, the Town

granted Plaintiff a Certificate of Occupancy for 20 units which were completed under Building

Permit No. 97-133.  Plaintiff began leasing these units in April of 1999.

Meanwhile, Romero continued with the construction of another 22 units, pursuant to same

building permit.  Due to Romero's inability to bring the remaining 22 units to completion, in

September of 1999, Plaintiff hired Steve Kenin ("Kenin") to oversee the project.  In October, the

Town's Planning Director urged Plaintiff to complete the project.  The Town also requested "as

built" plans for the project, which Plaintiff submitted, depicting the entire 42 apartment units.

Both Kenin & Romero continued to work to complete the project on time.  In June of 2000, the

Town required Romero to reapply for a building permit as a result of a dispute between the Town

and the State's Construction Industries Division, which is responsible for electrical and plumbing

inspections.  After Plaintiff paid a $2,750 permit fee, the permit was reissued.  The Town

continued its inspections and approvals of the project while it worked to resolve the dispute with

the State.

In October of 2000, Plaintiff terminated Romero as contractor, and informed the Town

that Kenin would be taking over as general contractor.  By this time, the project was over 80%

complete.  Problems for Plaintiff escalated in November of 2000, when the Town informed her for

the first time that she would have to apply for a special use permit because the project, although previously approved, exceeded applicable density levels.[1]   Additionally, Plaintiff was told for the first time that the original surveys were incorrect, and as a result, the permits previously issued were illegal.  Plaintiff then met with the Town's mayor and planning director to discuss these issues.  In the end, after having been allowed to finally complete only an additional 8 units -- for a total of 28 apartment units -- Plaintiff applied for a special use permit.  However, the request was denied by the Town's Planning and Zoning Commission in March 2001, as was the subsequent appeal of the decision to the Town Council.  Plaintiff was ultimately unable to resolve the density issue raised by the Town.  Shortly after the Town halted construction on Plaintiff's project, the Town was reorganized.

Plaintiff's original intention was to use proceeds of her late husband's estate, with the objective being to provide income for herself while leasing the apartments to others at a moderate price.  She states she has expended over $2,000,000 in development and construction of the apartment complex, relying on the permits issued and inspections made by the Town.  Plaintiff claims she has lost, and continues to lose, significant amounts of money as a result of the Town's decision to limit occupancy to 28 units.  The remaining 14 units have been virtually completed but have never been leased or occupied.  See Pltff's Exs. A-D.

**Discussion**

---

[1]  The Land Use Development Code for the Town of Taos allows higher densities in a particular zoning district through a special use permit, in order to provide "affordable housing." Deft's Ex. A.  According to Defendant, Plaintiff knowingly misrepresented the acreage of the property, and that the "as built" plan submitted by Steve Kenin in 2000 was the first drawing that showed quadraplexes and triplexes on the site.  Deft's Ex. B.   While this information has some interest in the context of Plaintiff's claims, it is not relevant to the jurisdictional issues which my dispositive findings address.

Plaintiff brings her claims under 42 U.S.C. § 1983, alleging violations of the Fifth Amendment (a "takings" claim), and the Fourteenth Amendment (substantive and procedural due process and equal protection). Plaintiff contends she has a vested property interest in being allowed to complete the construction of 42 apartment units, based on the Town's conduct and her reliance on that conduct. Plaintiff seeks compensation for what she considers a taking of her property by Defendant, and requests injunctive relief, recovery of her attorney's fees and costs. Defendant posits several bases for dismissal of Plaintiff's claims: (1) that Plaintiff has failed to state a claim under Fed.R.Civ.P.12(b)(6); (2) that Plaintiff's claims are not ripe for review; and (3) that this Court lacks jurisdiction to hear the claims under the Rooker-Feldman abstention doctrine. Since Defendant's second argument based on lack of ripeness controls the disposition of the case, I need not address the first and third arguments.[2]

## I.      Ripeness of Taking Claim

The Fifth Amendment, applied to the states through the Fourteenth Amendment, prohibits "taking" absent just compensation from the government. J.B. Ranch, Inc. v. Grand County, 958 F.2d 306, 308 (10th Cir.1992) (citing Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 175 n. 1 (1985)); Miller v. Campbell County, 945 F.2d 348, 352 (10th Cir.1991), cert. denied, 502 U.S. 1096 (1992). An aggrieved property owner must show more

---

[2]   Because ripeness concerns a question of subject matter jurisdiction, there is no need to convert the motion to dismiss to one for summary judgment based on defendant's reference to matters which are technically outside of the complaint. SK Finance SA v. La Plata County, Bd. of County Commissioners, 126 F.3d 1272, 1275 (10th Cir. 1997); Matthews v. United States, 720 F.Supp. 1535, 1536 (D.Kan. 1989); Sizova v. Nat'l Inst. of Standards & Technology, 282 F.3d 1320, 1324-25 (10th Cir. 2002). Therefore, Plaintiff's request for leave to file affidavits and evidence under Fed.R.Civ.P.56 is unnecessary.

than the deprivation of property; the owner must also show that the government refused just compensation for the loss.  First Bet Joint Venture v. City of Central City By and Through City Council 818 F.Supp. 1409 (D.Colo.,1993) (citing J.B. Ranch, 958 F.2d at 308).  In line with this requirement, a plaintiff must overcome two independent prudential hurdles to a regulatory takings claim before bringing the claim into federal court.  A plaintiff must first  demonstrate that she has received a "final decision regarding the application of the [challenged] regulations to the property at issue" from the government entity charged with implementing the regulations and second, that she has been denied compensation "through the procedures the State has provided for doing so." Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 734 (1997) (citing Williamson County, 473 U.S. at 194).

Therefore, Plaintiff in this case must demonstrate that she has satisfied the above described two-tiered hurdle.  The Town does not dispute that Plaintiff received a final decision on the application of the Town's zoning regulations to her property, thus meeting the first-tier of the Williamson County requirements.  What Defendant contends is that Plaintiff has not exhausted state procedures for compensation, since her inverse condemnation case is still on appeal in the New Mexico Court of Appeals.

The parties agree on the relevant facts.  However, they disagree on the legal import of those facts.  Plaintiff's application for a special use permit was denied in March of 2001.  Plaintiff did not appeal the decision of the zoning authority to the next level, which would have been the state district court, pursuant to NMSA 1978, § 39-3-1.1.[3]  That decision therefore became a final

---

[3] That statute provides for appeal of final decisions by agencies to district court, scope of review, and review of district court decisions.

decision of the zoning authority.  Ex. D. Rule 1-074(E), NMRA 2004 (appeal may be brought

within 30 days of agency decision).  Instead, in December of 2001, Plaintiff filed a *de novo* action

in state court asserting a claim for inverse condemnation, pursuant to NMSA 1978, § 42A-1-29,[4]

in which she argued that she had a vested property right to complete construction of the

additional 14 units.  The state district court granted Defendant's motion to dismiss on December

9, 2002, dismissing the case with prejudice.  Plaintiff's appeal of the dismissal is still pending.  Ex.

E; Complaint, ¶ 4.  Defendant argues that Plaintiff's claims are not yet exhausted due to that

appeal.  Plaintiff maintains that her state law inverse condemnation claims have been sufficiently

resolved in order to be ripe for review here.

What determines the disposition of Plaintiff's claims is not simply the fact that the state

law inverse condemnation claims are on appeal, but also the character of the issues awaiting a

decision by the state court.  Although the state district court issued a summary dismissal,

Defendant states that Plaintiff's inverse condemnation claim was dismissed based on the Town's

argument that Plaintiff could not pursue a state court *de novo* action in which she was seeking

relief "that squarely contradicted the Town Council's final zoning decision permitting 28 dwelling

units on the property."  Mot. to Dismiss, at 6, n.6.[5]  Thus, notwithstanding the requirement that

Plaintiff must satisfy the State's postdeprivation process before bringing her claims to federal

court, see Williamson County, 473 U.S. at 295, the question of whether Plaintiff in fact had this

procedure available to her has not been resolved.  The answer to that question, which is now

---

[4]  Section 42A-1-29 allows a plaintiff to seek compensation for property that was taken
or damaged without either compensation or condemnation.

[5]  Defendant does not attach its state court brief, but the Court accepts counsel's
representations of the basis for dismissal as accurate.

pending on appeal in state court, is critical to the ultimate issue of whether Plaintiff must complete the state inverse condemnation litigation to ripen her claims and proceed into federal court, or whether she has done all the State has made available to her.

Plaintiff argues that her claims are not premature. She contrasts the cases cited by Defendant in which state inverse condemnation claims were still pending, with her own situation, in that she has already been "turned away empty-handed" by the State because she has already been denied compensation for property that has been taken based on the dismissal of her claim by the state district court. See, Miller v. Campbell County, 945 F.2d 348, 352 (10th Cir. 1991); J.B. Ranch, 958 F.2d at 308-09 (citations omitted) (a property owner has not suffered a Fifth Amendment violation until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the government for obtaining such compensation); National Advertising Co. v. City and County of Denver, 912 F.2d 405, 413 (10th Cir.1990). But in the instant case, it is still unresolved whether Plaintiff has a state inverse condemnation procedure available to her, given her specific circumstances. See Williamson County, 473 U.S. at 196-97 (where respondent had not shown that inverse condemnation procedure was unavailable or inadequate, takings claim was premature until that procedure was utilized).

Accordingly, Plaintiff's takings claim is not ripe for judicial review because the question of whether a State postdeprivation procedure was available to Plaintiff, as well as possibly the completion of the procedure itself, is still unresolved.[6]

## II.     Claims brought under 42 U.S.C. § 1983

---

[6] I make no findings regarding whether Plaintiff has asserted a property interest, as the question is premature.

As mentioned above, Plaintiff has framed her claims in the context of violations of the Fifth and Fourteenth Amendments.  The preceding discussion focused on Plaintiff's takings claim under the Fifth Amendment.  However, Plaintiff's § 1983 claims must also comply with Williamson County's ripeness requirement.

Where § 1983 claims of due process and equal protection rest upon the same facts as a concomitant takings claim, the Tenth Circuit has determined that the more generalized Fourteenth Amendment claims are subsumed within "the more particularized protection of the Just Compensation [Takings] Clause."  Bateman v. City of West Bountiful, 89 F.3d 704, 709 (10th Cir.1996) (quoting Miller v. Campbell County, 945 F.2d 348, 352-53 (10th Cir.1991) (relying on Graham v. Connor, 490 U.S. 386 (1989)); see also, Salt Creek, L.P. v. City of Warr Acres, et al., (unpubl. opin.), 2002 WL 32026152 (W.D.Okla) (discussing Tenth Circuit cases); Landmark Land Company of Okla., Inc. v. Buchanan, 874 F.2d 717, 722 (10th Cir. 1989), abrog. on other grds by Federal Lands Legal Consortium v. U.S., 195 F.3d 1190, 1194 (10th Cir. 1999) ("In Landmark Land, the Tenth Circuit determined that the Williamson County two-part test was the proper test to determine ripeness of both substantive due process and equal protection claims under the Fourteenth Amendment").[7]

Thus, an unripe takings claim "renders the ancillary due process and equal protection claims unripe as well." Extending the ripeness requirement to this category of § 1983 claims has

---

[7]  The Tenth Circuit noted that the Williamson County requirements can be applied to § 1983 claims even though § 1983 does not require a litigant to first exhaust administrative remedies.  Bateman v. City of West Bountiful, et al., 89 F.3d 704, 707 (1996).  Whether administrative remedies must be exhausted is "conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable." Id. (citing Williamson County, 473 U.S. at 192) (explaining distinction).

practical applications as well.  It has been noted that "[a] contrary holding would . . . enable a resourceful litigant to circumvent the ripeness requirements [in <u>Williamson County</u>] simply by alleging a more generalized due process or equal protection violation." <u>Rau v. City of Garden Plain</u>, 76 F.Supp.2d 1173 (D.Kan.,1999) (dismissing plaintiffs' § 1983 claims based on violation of their substantive due process and equal protection rights are dismissed) (citing <u>Bateman</u>, 89 F.3d at 709).

Plaintiff's allegations of violations of due process (both substantive and procedural) and equal protection spring from factual assertions that are practically inseparable from her takings claim, and call for an analysis tied to that which is required for her Fifth Amendment claim.[8] Therefore, Plaintiff's Fourteenth Amendment claims are subject to the same jurisdictional requirements as her Fifth Amendment takings claim.  <u>See</u>, <u>J.B. Ranch</u>, 958 F.2d 306 (concluding that the jurisdictional requirements applicable to Fifth Amendment takings claims applied to due process claims where facts of case "fit squarely within the analysis developed in just compensation cases," even where plaintiff described cause of action more generally as an "unconstitutional taking. . . and a denial of due process").[9]  Neither Plaintiff's assertions in the complaint, nor a

---

[8] Although in a substantive due process claim a plaintiff is not seeking compensation for a taking, but rather the property (or its pecuniary equivalent), the takings clause and not substantive due process provides the analytical framework.   <u>See</u> <u>Forseth et al. v. Village of Sussex et al.</u>, 199 F.3d 363, 369 n.8 (7th Cir. 2000); <u>see</u> <u>also</u> <u>Zealy v. City of Waukesha</u>, 153 F.Supp. 2d 970 (E.D.Wisconsin)(distinguishing substantive due process claim from taking claim by the requirement that plaintiff show his contract rights to his property was a "fundamental" right).  In this case, I assume without actually deciding, the existence of a property interest which triggers the protections of due process.

[9] <u>See</u> <u>also</u> <u>First Bet</u>, 818 F.Supp. at 1412 (recognizing that under certain circumstances, Fourteenth Amendment due process rights may arise "which are beyond the more particularized claim asserted pursuant to the Just Compensation Clause of the Fifth Amendment," but that case at bar did not merit analysis different from an analysis under the Fifth Amendment); <u>Rau</u>, 76

liberal view of them, suggests an equal protection claim that would be analyzed differently from Plaintiff's takings claim under the Fifth Amendment.

Even though there has been a final decision on the application of the Town's zoning regulations to Plaintiff's property, there has been no "taking" until Plaintiff's relief is denied through the state's inverse condemnation procedure. See, First Bet, 818 F.Supp. at 1412 (concluding that plaintiff cannot avoid filing an action in state court to obtain just compensation for deprivation of property, because Tenth Circuit does not recognize claim under Just Compensation Clause for deprivation of property without prerequisite of a "taking"). The final outcome of that procedure is unknown because at this point, the state court of appeals has yet to determine whether Plaintiff has that route available to her.

## III.  Stay or Dismissal?

There is the remaining question of how the Court should dispose of Plaintiff's claims. Plaintiff would prefer the case to be stayed pending appeal, should the Court find the claims not ripe for review.[10]  While staying these proceedings pending the outcome of the state court litigation certainly makes sense, the issue of whether a claim is ripe for review bears on this

---

F.Supp.2d at 1177 (property interest asserted for purposes of plaintiffs' procedural due process claim was "coextensive with, or the same as," interest plaintiffs allege they were deprived of for purposes of their Fifth Amendment takings claim); Miller, 945 F.2d at 353 n.6(declining to address whether a taking might ever violate substantive or procedural due process without violating the Just Compensation Clause, but holding that claims in case at bar did not warrant separate due process analysis "over and above" an analysis based on the Just Compensation Clause); but see, Forseth, 199 F.3d at 371 (landowners who alleged that defendants acted "maliciously" by forcing landowners to convey land to village board president for his own private use as a condition for approval of development).

[10]  The case cited by Plaintiff in arguing for a stay instead of dismissal, Wilton v. Seven Falls Co., 515 U.S. 277 (1995), did not involve ripeness issues, and is thus inapposite to this case.

Court's subject matter jurisdiction under Article III of the Constitution.  Bateman, 89 F.3d at 706

(citing  New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1498-99 (10th Cir.1995));

Metropolitan Washington Airports Authority v. Citizens For Abatement of Aircraft Noise, Inc.,

501 U.S. ----, n.13, 111 S.Ct. 2298, 2306 n.13 (1991), cited in First Bet, 818 F.Supp. at 1411.

Accordingly, a ripeness challenge, like most other challenges to a court's subject matter

jurisdiction, is treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).

Bateman, 89 F.3d at 706.

   In sum, none of Plaintiff's claims are ripe for judicial review, and so they must be

dismissed as prematurely presented to this Court.  See, Lujan v. National Wildlife Federation, 497

U.S. 871, 891 (1990) (controversy not ripe for judicial review "until the scope of the controversy

has been reduced to more manageable proportions. . . ."), cited in Bateman, 89 F.3d at 707; see,

e.g., First Bet, 818 F.Supp. at 1412 (granting defendants' motion for judgment on pleadings,

dismissing plaintiff's due process and equal protection claims) (citing Landmark Land, 874 F.2d at

722-23).

   **THEREFORE,**

   **IT IS ORDERED** that Defendant's Motion to Dismiss **(Doc. 8)** is hereby GRANTED in

that Plaintiff's claims are DISMISSED WITHOUT PREJUDICE in their entirety, for the above

stated reasons.

_____
UNITED STATES DISTRICT JUDGE